**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Scottsdale Insurance Company, | No. CV-10-1661-PHX-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| Deanna K. Cook, | |
| Defendant. | |

We have before us defendant's motion to dismiss (doc. 18), plaintiff's response (doc. 23), and defendant's reply (doc. 27). Plaintiff is defendant's former employer.

To state a claim upon which relief can be granted, plaintiff's complaint must contain "well-pleaded factual allegations," which "plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, __ U.S. ___, ___, 129 S.Ct. 1937, 1950 (2009). Plaintiff submitted several documents in support of its complaint, which we may consider. See Amfac Mortg. Corp. v. Arizona Mall of Tempe, Inc., 583 F.2d 426, 430 (9th Cir. 1978) ("the scope of the facts which can support plaintiff's claim is limited by the documents attached to the complaint and involved in this transaction."). We need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

The subject of this dispute is a number of documents which defendant acquired from

1 plaintiff during her employment. Defendant claims she gathered the documents at the request
2 of the Ethics/Legal Department of Nationwide Insurance, plaintiff's parent company, in
3 connection with an ethics complaint defendant made to Nationwide about plaintiff's denial
4 of certain coverage and claims. In January, 2010, after defendant was no longer employed
5 by plaintiff, plaintiff's lawyer called defendant to inform her that plaintiff was being sued and
6 that it would be okay for defendant to talk to counsel for the group suing plaintiff, Ballard
7 Condominiums Owner Association ("Ballard"). See Complaint, ex. D.  Defendant then
8 emailed a Human Resources employee to confirm that there were no confidentiality or non-
9 disclosure agreements that still applied to her.  The Human Resources representative
10 responded that plaintiff has agreements that apply to active associates, "which mostly appl[y]
11 to policies relative to confidential information you have as an associate...we don't have
12 non-disclosure agreements or confidentiality agreements post employment." Complaint, ex.
13 D at 11.  Defendant then contacted Todd Skoglund, counsel for Ballard, and gave his law
14 firm several documents she had collected as part of the ethics inquiry for Nationwide.
15 Plaintiff then brought this action, alleging (1) breach of contract, (2) violation of Arizona's
16 Trade Secrets Act, (3) conversion, (4) breach of fiduciary duty, and, (5) replevin.

**I**

Plaintiff's first claim is for a breach of three employment contracts.  The Nationwide/Scottsdale Information Security Policy provides that "[i]nformation to which you have access should only be shared with authorized individuals," and the policy prohibits the removal of propriety and/or confidential information without prior authorization. Complaint, ex. A.  The Nationwide/Scottsdale Code of Conduct prohibits unauthorized disclosure of confidential information and trade secrets, and provides that an employee's "obligation to preserve confidential information continues even after your employment with Nationwide ends." Complaint, ex. B. The Nationwide Confidentiality Agreement required defendant not to "disclose or use any confidential information except in the performance of [her] job," and to "not keep, use, or disclose any material containing confidential information" after she ended her employment with Nationwide, unless authorized. Complaint, ex. C.

1     Defendant argues that she could not have violated these agreements by sending
2 documents to the Ballard lawyer because plaintiff's representatives told her she was
3 permitted to do so. Defendant relies on an affidavit that she prepared for the <u>Ballard</u> action,
4 attached to the complaint, in which she states that plaintiff's lawyer informed her that she
5 could speak with the Ballard lawyer, and that plaintiff's lawyer said nothing about the
6 documents that plaintiff knew were in her possession. <u>Complaint</u>, ex. D, ¶ 12. However,
7 even taking as true all statements in defendant's declaration, plaintiff has stated a claim for
8 breach of contract. Plaintiff's lawyer's general advice to defendant to cooperate with the
9 Ballard lawyer is not necessarily a release from the confidentiality and non-disclosure
10 contracts which defendant had signed. Additionally, plaintiff's lawyer was not required to
11 explicitly instruct defendant not to share documents that may have been protected by the
12 employment agreements.

13    Defendant also relies on the email she received from plaintiff's Human Resources
14 employee, stating that plaintiff did not have any post-employment confidentiality agreements.
15 <u>Complaint</u>, ex. D at 11. This statement is apparently inconsistent with some of the terms of
16 the employment contracts, which explicitly state that the confidentiality requirement extends
17 past the conclusion of defendant's employment. Perhaps the author of the email was
18 unaware of the continuing obligations under the contracts that defendant had previously
19 signed, or she intended to communicate that there are no separate agreements that apply
20 exclusively to former employees. That there may be waiver or estoppel issues does not mean
21 that a claim is not stated.

22    Defendant also argues that the breach of contract claim fails because plaintiff has not
23 alleged that it suffered any damages. <u>See</u> <u>Clark v. Compania Ganadera de Cananea, S.A.</u>,
24 95 Ariz. 90, 94, 387 P.2d 235, 238 (1963) (to state a prima facie case for breach of contract,
25 plaintiff must establish the existence of a contract, a beach, and resulting damages).
26 However, as part of its claim for a violation of the Arizona Uniform Trade Secrets Act,
27 plaintiff alleges, "As a direct and proximate result of Cook's unlawful conduct, Scottsdale
28 has and will continue to suffer damages in excess of $75,000.00." <u>Complaint</u>, ¶ 47. Plaintiff

1 makes similar allegations about damages in connection with the other claims. See
2 Complaint, ¶¶ 56, 61 & 66. Additionally, in its prayer for relief, plaintiff asks for recovery
3 from defendant "for the damages suffered as a result of Cook's breaches of contract. . . ."
4 Complaint, ¶ 69. These statements are sufficient. We therefore deny defendant's motion to
5 dismiss plaintiff's breach of contract claim.

## II

Defendant next argues that plaintiff has failed to state a claim for a violation of the Arizona Uniform Trade Secrets Act. To state a claim under the Act, plaintiff must allege that defendant misappropriated plaintiff's trade secrets through improper means. See A.R.S. § 44-401; Miller v. Hehlen, 209 Ariz. 462, 470, 104 P.3d 193, 201 (Ariz.Ct.App. 2005).

First, defendant argues that plaintiff does not allege with the requisite specificity that any trade secret information was disclosed. A trade secret is information that both "(a) [d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use" and "(b) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." A.R.S. § 44-401(4).

Plaintiff alleges only that defendant misappropriated "a large number of documents, consisting of claims records and other confidential information," which may have included "insureds' financial information, social security numbers, and other private, personal and sensitive information." Complaint, ¶¶ 20, 22. Financial and customer data can constitute a protectable trade secret. See Enterprise Leasing Co. of Phoenix v. Ehmke, 197 Ariz. 144, 151, 3 P.3d 1064, 1070 (Ariz.Ct.App. 1999) (documents about plaintiff's finances and operations contained trade secrets because a competitor would have detailed financial data that might be used in business decisions and could provide a blueprint of plaintiff's customer-service principles). However, plaintiff makes only minimal factual allegations about the specific trade secrets that were allegedly disclosed, and barely goes beyond conclusory allegations of each element of the offense. Complaint, ¶¶ 34–51. Plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and

- 4 -

conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65 (2007) (internal citations omitted). Plaintiff's allegations are not sufficient to explain why the information constitutes trade secrets, or how exactly it derives its independent economic value from not being generally known. And while the provisions of the confidentiality agreements may be relevant to plaintiff's efforts to maintain the secrecy of the allegedly misappropriated secrets, plaintiff does not allege that directly.

Because of plaintiff's failure to make well-pleaded factual allegations about the trade secrets, we grant defendant's motion to dismiss the claim for a violation of the Arizona Uniform Trade Secrets Act.

**III**

Defendant also argues that plaintiff fails to state a claim for conversion and misappropriation. Conversion "is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Restatement (Second) of Torts § 222A(1) (1965); see also Miller, 209 Ariz. at 472, 104 P.3d at 203. The object of an action for conversion must be "personal property that is tangible, [or] intangible property that is merged in, or identified with, some document." Miller, 209 Ariz. at 472, 104 P.3d at 203. For purposes of conversion, a customer list does not "constitute intangible property merged with a document in the same sense as a stock certificate or an insurance policy." Id. Similarly, although the documents at issue here are tangible items, they do not confer any substantive rights. The information contained in them is intangible and therefore not the proper subject of an action for conversion. Accordingly, we grant defendant's motion to dismiss the conversion claim.

**IV**

Defendant argues that plaintiff's claim for a breach of fiduciary duty fails because her duties ended when she stopped working for defendant, and the allegedly wrongful conduct occurred after the termination of her employment. Defendant also argues that any

disclosures she made were authorized by plaintiff, and therefore could not have been in breach of her duties. In Arizona, an employee owes his employer a fiduciary duty. See Restatement (Second) of Agency § 2 (1958); Mallamo v. Hartman, 70 Ariz. 294, 298, 219 P.2d 1039, 1041 (1950). In the absence of any restrictive covenant, a former employee does not owe a fiduciary duty to his former employer. See Restatement (Second) of Agency § 396. Therefore, defendant cannot be liable for a breach of her fiduciary duty arising out of anything that occurred after she stopped working for plaintiff.[1] Plaintiff alleges that defendant's "misappropriation and unauthorized disclosures of confidential information constitutes a breach of Cook's fiduciary duties to Scottsdale." Complaint, ¶ 60. However, these disclosures occurred in January, 2010, and defendant resigned on December 14, 2009. Because the disclosures occurred after the termination of her employment, they cannot be the basis for an action for breach of fiduciary duty. Therefore, we grant defendant's motion to dismiss the breach of fiduciary duty claim.

V

Plaintiff's last cause of action is for a writ of replevin. This claim fails because "there is no common law right of prejudgment replevin in Arizona when the subject matter of the dispute, although wrongfully detained, is lawfully acquired by defendant." First Nat. Bank of Arizona v. Superior Court of Maricopa County, 112 Ariz. 292, 295, 541 P.2d 392, 396 (1975). Plaintiff does not allege that defendant wrongfully obtained possession of the documents. Therefore, because there was no tortious taking, there can be no action for replevin. We grant defendant's motion to dismiss the claim for a writ of replevin.

VI

**IT IS ORDERED GRANTING IN PART AND DENYING IN PART** defendant's motion to dismiss (doc. 18). **IT IS ORDERED GRANTING** defendant's motion to dismiss plaintiff's claims for a violation of the Arizona Uniform Trade Secrets Act, conversion,

---

[1] Defendant argues that plaintiff agreed to never disclose confidential information, and that this obligation did not end with her employment. Response at 10. This is relevant to plaintiff's claim for breach of contract, not to its claim for a breach of fiduciary duty.

- 6 -

1 breach of fiduciary duty, and replevin.  **IT IS ORDERED DENYING** defendant's motion
2 to dismiss plaintiff's claim for breach of contract.
3       DATED this 23rd day of November, 2010.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge